STATE OF CONNECTICUT v. FREDERICK DREXEL

BALDWIN, C. J., KING, MURPHY, SHEA and BORDON, Js.

Argued May 9—decided May 29, 1961

440

*Ufa E. Guthrie,* for the appellant (defendant).

*William J. Larkin 2d,* prosecuting attorney, for the appellee (state).

KING, J. The defendant was convicted under an information charging him with "maintaining nuisances and sources of filth injurious to the public health, which he has failed to remove or abate, in . . . Waterbury, on the 2d day of June, 1958, in violation" of what is now, in slightly but immaterially changed form, § 19-79 of the General Statutes.[1]

The defendant and his two sisters owned seven

---

[1] "Sec. 19-79. DUTIES OF MUNICIPAL DIRECTORS OF HEALTH. Town, city and borough directors of health shall, within their respective jurisdictions, examine into all nuisances and sources of filth injurious to the public health, cause such nuisances to be abated and cause to be removed all filth which in their judgment may endanger the health of the inhabitants; and all expenses for the abatement or removal of such nuisance or filth shall be paid by the person who placed it there, if known, and, if not known, by the town, city or borough, as the case may be. When any such filth or nuisance is found on private property, such director of health shall notify the owner or occupant of such property to remove or abate the same at his expense, within such time as the director directs, and, if he fails to remove it, he shall be fined not more than one hundred dollars and pay the expense and costs incurred by such removal or abatement. Any director of health or any qualified person authorized by him to do so may enter all places within his jurisdiction where there is just cause to suspect any nuisance or source of filth to exist."

vacant houses situated near together in Waterbury. The defendant controlled these houses on behalf of the owners. Pursuant to a complaint, the director of health of Waterbury had the houses examined on April 18, 1958, and, under date of May 2, 1958, issued a written order to the defendant, with copies to the two other owners, in which he described in detail the dilapidated, unsightly and unsanitary condition of the premises and found that they were unfit for human habitation and constituted a fire, health and safety hazard. The defendant was ordered either to demolish the houses or to restore them and put the property in a safe and sanitary condition, "to the satisfaction of [the] . . . Board of Health, Building Inspector, Electrical Inspector and Fire Marshal, within thirty . . . days [from] . . . receipt of" the order. It was further stated that if the conditions had not been remedied within that period, the department of health would act under the provisions of what is now § 19-79 and abate "said nuisances" at the defendant's expense.

The statute under which the defendant was tried requires that he be given notice and "such time as the director [of health] directs" in which to remove or abate the nuisance. The defendant claims that his conviction was illegal, since the time allowed for compliance with the order of abatement had not expired on the date, June 2, 1958, on which he was charged in the information with having violated the statute. The information charged the defendant with "maintaining nuisances and sources of filth" which he had failed to abate on June 2, 1958. The order of abatement gave him a thirty-day period from its "receipt" in which to carry it out. When the order was first mailed to him is not disclosed by the finding. If we were to resort to the exhibit,

an envelope addressed to the defendant, it would appear that the order was mailed on May 5, 1958. The envelope bears this notation, apparently made by the letter carrier: "Party not at home—Left notice—5-6-58." Clearly, the defendant could not on these facts be found guilty on this information, since the time allowed him in the order for compliance with its terms would not have expired on June 2, 1958, even if we assumed that "receipt" of the order was at the moment of attempted delivery by mail on May 6. On June 2, 1958, the order was served upon the defendant by a sheriff. If this service had any effect, a question which we are not called upon to determine, it was to extend the time in which the defendant might comply with the order to thirty days from the date of the service.

While an allegation of time in an information is often not material, it must be considered to be an allegation that the offense was committed "after it became and while it was an offense." Practice Book § 349 (b); see *State* v. *Ferris,* 81 Conn. 97, 100, 70 A. 587. The crime charged here could not have become an offense until the expiration of the time allowed in the order for compliance with its terms. That expiration could not occur until after the date charged in the information.

Consideration of the other assignments of error is unnecessary.

There is error, the judgment is set aside and the case is remanded with direction to dismiss the information.

In this opinion the other judges concurred.